UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PHAROAH V. MORRIS,

    Plaintiff,

v.                                                                                                Case No. 05-C-0458

LETITIA LEY, et al.,

    Defendant.

**DECISION AND ORDER**

Plaintiff, Pharoah V. Morris, filed this *pro se* civil rights action under 42 U.S.C. § 1983 and is proceeding *in forma pauperis* on an Eighth Amendment conditions of confinement claim, alleging defendants Isaacsons, Douma, Higbee, Delong, Nickel, and Nelson kept him in an unsanitary cell from October 13 to October 23, 2003, and ignored his requests to be moved to a different cell or provided with cleaning supplies. This matter comes before the court on the defendants' second motion for summary judgment and Morris' motions concerning appointment of counsel, discovery and summary judgment procedures. For the following reasons, Morris' motion to cure his response to the defendants' proposed findings of fact will be granted, but his other requests will be denied. The defendants' motion for summary judgment will be granted, and this case dismissed.

**I.    Morris' Outstanding Motions**

During a hearing held May 13, 2008, the court addressed Morris' recent objections and motion for sanctions, in which he alleged that certain legal documents that were apparently

misplaced during his transfer between prisons were not returned to him. (Dkt. #270, #275.) The court directed Morris' custodian to make every effort to return or replace the documents, if any, that remain missing. In all other respects, the motion was denied. Currently pending are twelve other motions filed by Morris requesting various forms of relief. The Federal Rules of Civil Procedure do not provide for several of Morris' requests, such as a motion to clarify, a motion to reiterate or a motion to cure. Nevertheless, this court has been directed to look to the substance of an inmate's filing rather than its label. *United States v. Antonelli*, 371 F.3d 360, 361 (7th Cir. 2004). Therefore, the court will address all of Morris' applications below. However, in the interest of efficiency, Morris should attempt to make any future motion(s) in compliance with the Federal Rules of Civil Procedure.

**A.     Motion to Appoint Counsel**

On October 23, 2007, Morris filed a motion to appoint counsel. As grounds for his request, he states: (1) that he is in segregation; (2) his prior court-appointed attorney withdrew from representing him in this case; (3) he is unable to view his medical files; (4) he disagreed with the decisions made by his prior counsel; and (5) and his circumstances have not changed since counsel was appointed to represent him in February, 2007.

As discussed in this court's orders of July 8 and December 23, 2005, indigent civil litigants have no absolute constitutional or statutory right to be represented by counsel in federal court. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992); *McKeever v. Israel*, 689 F.2d 1315, 1318 (7th Cir. 1982). Thus, when the court appointed counsel to represent Morris in February, 2007, it was not guaranteeing that he would continue to retain the services of an attorney at no cost for the duration of this litigation.

In August, 2007, Morris' court-appointed attorney stated that he and Morris disagreed about how the case should be handled. Counsel also indicated that the attorney-client relationship had deteriorated and that Morris did not trust him. To the extent Morris believes that his attorney should not have been permitted to withdraw, he is advised that a court is authorized to request, but not to *compel*, *see Mallard v. United States District Court*, 490 U.S. 296 (1989), an attorney to represent an indigent civil litigant pursuant to 28 U.S.C. § 1915(e)(1).

The Court of Appeals for the Seventh Circuit recently held that "[w]hen confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007)(rehearing en banc)(citing *Farmer v. Haas*, 990 F.2d 319, 321-22 (7th Cir. 1993)). In the present case, Morris avers he cannot litigate this case because he is in segregation. However, he filed a lengthy response to the defendants' motion for summary judgment. Moreover, the documents on file show that Morris has been communicating with the defendants regarding an ongoing discovery dispute and there is no indication that Morris' segregation status is impeding his ability to collect information from the defendants. Finally, Morris is proceeding on one narrow conditions of confinement claim relating exclusively to the conditions of the segregation cell in which he, and no other inmate, was confined for a period of ten days. The facts in support of his claim, to the extent they exist, are for the most part within his personal knowledge, and the claim is not procedurally complex. For all these reasons and given the unsuccessful effort to appoint counsel in the past, the court does not believe that the appointment of counsel would be likely to

3

make a difference in the outcome of this case. Thus, Morris' motion to appoint counsel will be denied.

**B.     Motion for Extension of Time**

On October 31, 2007, Morris filed a motion for extension of time in which to conduct discovery. However, one day earlier, on October 30, 2007, the defendants were ordered to provide him with materials responsive to his outstanding discovery request. And, on November 15, 2007, Morris indicated that he received such a response. Thus, Morris' October 31, 2007, motion for extension of time will be denied as moot.

**C.     Motion to Stay**

On November 15, 2007, Morris filed a motion to stay the extension of time that the defendants were granted to respond to his discovery request. As discussed, *supra*, on October 30, 2007, the court granted the defendants an extension of time to provide Morris with materials responsive to his outstanding discovery request. By his own admission, Morris has been provided with such materials. Now, he claims that the defendants' response is insufficient insofar as "there is clearly a dispute of what documents the defendants are claiming are confidential, protected and private [.]" (Pl.'s Mot. at 1.) However, the defendants are not obligated to disclose privileged material. *See* Fed. R. Civ. P. 26(b)(1). And, to the extent Morris challenges the defendants' response on other grounds, he has not adequately articulated any such reasons. Thus, Morris' motion to stay will be denied.

**D.     Motion to Clarify**

On November 7, 2007, Morris filed a motion to clarify in which he asks the court to: (a) explain why his court-appointed attorney withdrew from this case; and (b) replace his previous

4

attorney with new counsel. As discussed, *supra*, Morris' court-appointed attorney was permitted to withdraw because there was a breakdown of the attorney-client relationship. Additionally, the court has determined that appointment of counsel is not warranted at this stage of the proceedings. Thus, Morris' motion to clarify will be denied as moot.

**E.    Motion to Compel**

On November 30, 2007, Morris filed a motion to compel. As best the court can tell, he seeks to compel the defendants to respond to: (1) interrogatories 7, 10 and 14 and requests 5, 6 and 7 from his First Set of Written Interrogatories and Request for Production of Documents; (2) his Third Set of Written Interrogatories and Request for Production of Documents; (3) requests 1, 2 and 6 from his request for production of documents dated October 20, 2007; (4) requests 1, 2, 3, 4 and 7 from his discovery requests dated October 26, 2007; (5) requests 1, 2, 3, 4, 5, 7, 8, 9 and 10 from his letter dated November 13, 2007; and (6) initial disclosures as required under Fed. R. Civ. P. 26(a)(1)(E).

Although Fed. R. Civ P. 37 permits the court to compel discovery, the party seeking such discovery must complete several steps before court intervention is appropriate. The party seeking discovery must first direct his request to the opposing party. If the opposing party fails to provide the materials, the party must then "personal[ly] consult[]" with the opposing party and "attempt[] to resolve their differences." Civ. L.R. 37.1 (E.D. Wis.). If the party is still unable to obtain discovery, he may file a motion to compel discovery with the court pursuant to Fed. R. Civ. P. 37(a). Such motion must be accompanied by a written statement that the parties were unable to resolve their differences after personal consultation and a statement of the "date and time of such conference and the names of all parties participating in it." *Id*.

5

Morris has satisfied the personal consultation requirement. However, the court has reviewed the defendants' responses and determined that they are reasonable. Moreover, Morris, as a *pro se* prisoner, is not entitled to initial disclosures. *See* Fed. R. Civ. P. 26(a)(B)(iv). Thus, his motion to compel will be denied.

F.   **Motion to Strike**[1]

On December 21, 2007, Morris filed a motion to strike the affidavit of Roxan C. Halterman, in which she states that Morris began to review his medical records on October 18, 2007, but that he was prematurely escorted back to his cell for being disruptive. Morris states that in contrast to Ms. Halterman's account of the events that transpired on October 18, 2007, he was told that he could not review his records because they were being held at Waupun Correctional Institution. Additionally, Morris asserts that, although he was permitted to review portions of his medical records on November 19, 2007, he was not given his complete medical file.

The court did not rely on Ms. Halterman's affidavit in resolving Morris' motion to compel. Thus, his motion to strike her affidavit will be denied as moot.

G.   **Motion to Reiterate**

On November 30, 2007, Morris filed a motion to reiterate, in which he attempts to re-assert the following previous motions: (1) his motion to compel; (2) his motion to stay; (3) his motion to clarify; (4) his motion for appointment of counsel; and (5) his petition for an alternative writ of mandamus. The Federal Rules of Civil Procedure do not provide for a motion to reiterate.

---

[1] Morris' motion to strike also serves as his response to the defendants' motion for summary judgment.

6

Inasmuch as Morris seeks to revisit previous decisions of this court, his motion is construed as one for reconsideration. A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)(citation omitted). While it is true that any nonfinal decision or order is subject to revision at any time before the entry of judgment, Fed. R. Civ. P. 54(b), such revisions are discouraged. "A court has the power to revisit prior decisions of its own . . . in any circumstance such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)(quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8 (1983)). In general, however, "litigants must fight an uphill battle in order to prevail on a motion for reconsideration." *United Air Lines, Inc.*, 916 F. Supp. 793, 795 (N.D. Ill. 1996).

In the present case, Morris has not presented newly discovered evidence nor has he shown that the challenged decisions contained a manifest error of law. Rather, he wishes to re-argue his prior motions, which is not an appropriate use of Rule 54(b). Thus, Morris' motion for reconsideration will be denied.

**H.     Motion for Reconsideration and Objection and Request to Reiterate Rule 6(b) Objection**

On January 14, 2008, Morris filed a motion for reconsideration and objection along with a request to reiterate this objection. By both applications, Morris seeks reconsideration of this court's January 4, 2008, margin order granting the defendants' an extension of time to file a reply. Morris asserts that the extension of time is not consistent with Fed. R. Civ. P. 6(b) because the defendants

filed their motion after the date for filing a reply had expired. Therefore, Morris argues, the defendants waived the opportunity to file a reply brief.

Federal Rule of Civil Procedure 6(b) provides, in pertinent part,

> When an act must be done within a specified time, the court may, for good cause, extend the time:
>
> (A) with or without motion or notice if the court act, or if a request is made, before the original time or its extension expires, or
>
> (B) on motion after the time has expired if the party failed to act because of excusable neglect.

For several reasons, Morris' arguments are not compelling. First, Morris avers that the defendants were served with his response on December 18, 2007, and, therefore, any reply was due on or before January 2, 2008. *See* Civil L.R. 56.2 (b). In support of his assertion, Morris has submitted postage requests dated December 18, 2007. These documents, however, do not demonstrate that the defendants were served on this date. At most, Morris' disbursement requests show that his response was <u>mailed</u> on December 18, 2007.

Furthermore, even if the defendants received Morris' response on December 18, 2007, and their motion for extension of time was filed after the time for filing a reply had lapsed, they are not precluded from obtaining an extension of time. Rather, Rule 6(b) provides that the defendants must show that their delay was the result of excusable neglect. In the present case, counsel for the defendants assert that she did not receive Morris' response until January 2, 2008, because she was out of the office and that she had an extensive workload.

Notably, Morris asserts that these arguments do not satisfy the excusable neglect standard. In determining whether a party has demonstrated excusable neglect, the Seventh Circuit has directed

8

district courts to take into account "all relevant circumstances surrounding the party's omission." *Raymond v. Ameritech* Corp., 442 F.3d 600, 606 (7th Cir. 2006). "These include . . . the danger of prejudice . . . , the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant and whether the movant acted in good faith." *Id*. Here, the defendants requested an extension of time on January 3, 2008, one day after the deadline for filing a reply had passed. Morris has not demonstrated that he was prejudiced by this one-day delay. Additionally, Morris' response was served on the defendants during the end of the 2007 calendar year and the beginning of 2008, during which there were two federal holidays and the court was closed. For all these reasons, Morris' motion for reconsideration and motion to reiterate will be denied.

## I. Motion for Opportunity to Cure

On February 5, 2008, Morris filed a motion for opportunity to cure his concise statement of disputed material fact. He avers that he did not respond to each of the defendants' proposed findings of fact because he was not aware of such a requirement. Review of the docket reveals that he was provided with a copy of Civil L.R. 56.1 and 56.2, which set forth the summary judgment response procedures in the Eastern District of Wisconsin. Therefore, Morris was advised as to how his response should be formatted.

However, the court notes that Morris has complained that his legal papers were seized. Moreover, the defendants do not object to his request. Therefore, Morris' motion to cure will be granted. The court will consider both his original and cured response when resolving the defendants' motion for summary judgment, to which I now turn.

## II.     Defendants' Motion for Summary Judgment

Following the defendants' first motion for summary judgment, the only claim that remains in this case is Morris' Eighth Amendment claim alleging that defendants Isaacsons, Douma, Higbee, Delong, Nickel, and Nelson kept him in an unsanitary cell in the Segregation Unit at Columbia Correctional Institution from October 13 to October 23, 2003, and ignored his requests to be moved to a different cell or provided with cleaning supplies. The defendants have now filed a motion for summary judgment claiming that based upon the record, there is no genuine dispute as to whether the conditions of Morris' cell met the minimal constitutional requirements for sanitation. They contend his claims that his cell was smeared in feces are "incredulous," because the offender complaints he filed during the relevant time period fail to mention any problem with human waste. (Br. Supp. Mot. Summ. J. 7.) They also argue summary judgment is warranted because Morris has admitted that he was allowed to clean his cell. (*Id*. at 4.) In addition, the defendants claim they are entitled to qualified immunity. (*Id*. at 9.)

The court's order of December 5, 2006 denied the defendants' first motion for summary judgment as to Morris' conditions of confinement claim because Morris alleged that for ten days he was exposed to dried human feces and was not allowed to clean the human waste from his cell. (Order December 5, 2006 at 23.) Thus, the court distinguished Morris' claim from the allegations dismissed by Judge Crabb in *Ramirez v. McCaughtry*, 2004 WL 1920219, *5-6 (W.D. Wis. 2004), in which an inmate filed a complaint claiming that he was housed in cells with feces, blood, food and urine on the floors and walls, but admitted that he was permitted to clean his cell once a week. (*Id*.) The defendants have now presented evidence that casts serious doubt upon Morris' allegations that parts of his cell were covered in human feces. More importantly, he has admitted that he was

10

provided supplies with which he could have cleaned his cell. Accordingly, the defendants' motion for summary judgment will be granted.

**A.     Summary Judgment Standard**

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id*.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id*. at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id*. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a

11

genuine issue for trial. *Id*. at 323-24. "A mere scintilla of evidence in support of a claim will be insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party." *Walker v. Sheahan*, 2008 WL 2038891, *2 (7th Cir. 2008) (citing *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 599 (7th Cir. 2000)). Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. However, it is "not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (footnote omitted). Thus, while summary judgment is not a procedure for resolving a swearing contest, *see Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992), "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007).

**B.     Plaintiff's Eighth Amendment Claim**

The Eighth Amendment's proscription of cruel and unusual punishment requires prison officials to maintain minimal sanitary and safe prison conditions. *Johnson v. Pelker*, 891 F.2d, 136 (7th Cir. 1989). "Not surprisingly, human waste has been considered particularly offensive so that 'courts have been especially cautious about condoning conditions that include an inmate's proximity

12

to it.'" *McBride v. Deer*, 240 F.3d 1287, 1291-92 (10th Cir. 2001) (quoting *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990)). For example, in *Johnson*, the Seventh Circuit Court of Appeals found an inmate's allegations sufficient to state an actionable claim for violation of the Eighth Amendment where he alleged he was housed in a segregation cell for three days without running water or cleaning supplies, such that he was unable to clean the cell walls, which were smeared with human feces. *Johnson v. Pelker*, 891 F.2d 136 (7th Cir. 1989). However, to prevail on an Eighth Amendment conditions of confinement claim, a plaintiff must establish that he was denied "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). He must also show that the defendants acted with a "sufficiently culpable state of mind," and that he was deprived of "a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

In this case, Morris has failed to produce sufficient evidence in response to the defendants' second motion for summary judgment to show a genuine issue for trial. The record, taken as a whole, casts serious doubt on his claims of the presence of human feces in his cell. Furthermore, his allegations that he was denied cleaning supplies are contradicted by undisputed evidence of record, including his own admissions. Accordingly, I conclude that no rational trier of fact could find in his favor, and the defendants are entitled to summary judgment.

Morris alleges that from October 13, 2003 through October 23, 2003, he was confined to a segregation cell, known as "DS-1 #7," which had "dried human waste smeared all over the inside of the door, and all over the trap door part where the plaintiff was supposed to receive all of his meals," and "the light fixture was covered with smeared human feces." (Fourth Am. Compl. ¶ 51.) He claims that upon his placement in the cell, he requested cleaning supplies, but his request was

13

denied. (*Id*.) According to Morris, during the ten days in which he was held in this cell, he informed each of the defendants of the conditions of his cell, and begged each to be moved or provided with cleaning supplies, but his requests were continuously refused. (*Id*. ¶¶ 55-59.) He claims that as a result of the unsanitary conditions of his cell, he became very sick, and requested medical attention, because his eyes and head had swollen, a large "knot" formed on his forehead, and he suffered from a severe headache and stomachache, which prevented him from eating or sleeping. (*Id*. ¶¶ 61-62.) After examination by a nurse through his cell window, Morris claims he was taken to the "day room," and administered an "emergency shot" of medication, but was then returned to the same cell, where he continued to be exposed to unconstitutional conditions. (*Id*. ¶¶ 63-64.)

The evidence of record calls into serious doubt Morris' claim that human feces was smeared within his cell. Morris himself submitted to the court the declaration of his fellow inmate Sonniel Gidarsingh, which indicates that after the former occupant of cell DS-1 #7 was transferred, and prior to Morris' arrival, the cell was power washed by inmate workers. (Morris' Mot. to Strike, Ex. J1, ¶ 18, Gidarisingh Decl. Dec. 13, 2007.) The defendants have identified three offender complaints filed by Morris during the ten day period in which he was allegedly detained in unsanitary conditions. In these offender complaints, Morris complains of threatening writing on the walls of his cell, missing personal property, and facial swelling, but does not mention the presence of human waste. (Gerber Aff. ¶ 6, Exs. A, B, C, D, Nov. 28, 2007.) For example, his offender complaint of October 21, 2003 describes the facial swelling that Morris now attributes to the unsanitary condition of his cell, and states, "I do not know what is happening to me or why I am swollen up, I continue to fear staff's motives as in my cell written all over the walls is "die," "Eat Shit and Die" and now

14

I'm experiencing some strange unexplained dangers to my health and sanity." (*Id*., Ex. D.) Yet although the complaint reports the writing on his cell walls, it makes no mention of feces within the cell, or even a foul odor.

At his deposition, Morris claimed to have filed additional offender complaints during the time he was confined in the cell at issue, alleging that these complaints were returned to him rather than processed by the prison officials, because they addressed more than one subject of concern. (Morris Dep. 58:25, 59: 1-25, 60: 1-22, 65: 12-25, 66:1-15.) According to Morris, "at first [he] included everything," in one complaint, but it was returned to him, and he learned that separate complaints would have to be filed because "[y]ou have to talk about one subject. Just one. Each complaint." (*Id*. 59:9-11.) Morris claims that inmates were only allowed to file two complaints per week, and that although he filed many more, and the prison "kept the ones they wanted to keep," and returned his complaint of "feces everywhere." (*Id*. 60:13-25.) Morris' "Returned Offender Complaint Database," however, indicates that the only document returned to him between October 1, 2003 and November 1, 2003 regarded his appeal of the rejection of his complaint number CCI-2003-35908, filed October 30, 2003. (Gerber Aff. ¶ 8, Ex. F.) It is also clear that during the ten days he was held in the cell at issue, he successfully filed three complaints, two on October 16, and one on October 22, 2003. Thus, even if, as he alleges, Morris was limited to filing two complaints per week, he could have filed a complaint about the feces prior to October 30, 2003, the date of the first offender complaint of record in which he alleged the presence of feces in his cell.

Even the allegations of his offender complaint dated October 30, 2003, filed after he was transferred to Waupun, (Gerber Aff. ¶¶ 6-7, Ex. A) fall short of those he now asserts. The offender complaint states, "I was told by my neighbor that I should attempt to clean my Trap to my door

15

really good as another Inmate had smeared Human Waste all over the Trap, the Window, and the Vent of the Door, The Walls of the Cell also . . . ." (*Id.*, Ex. E.) Morris testified at deposition that it did not appear that there was any feces on the walls of his cell. (Morris Dep. 34: 11-12.) Although he testified at his deposition that he could not even see who was talking to him through the door of his cell because it was smeared with feces, (*Id.* 34: 20-22) his October 30 offender complaint alleged only that the cell "smelled like Human waste," and that he "could see what appeared to be Human Waste on the ceiling and the light." (*Id.*) It made no mention of any feces on the cell door.

Morris' allegations are further contradicted by prison records. Defendant Nickel has filed an affidavit indicating that a review of the log book for the segregation unit in which Morris was housed shows that from September 29, 2003 to October 27, 2003, smeared feces was noted in other cells in the DS-1 unit, but not in DS-1 #7. (Nickel Aff. ¶ 9, Nov. 30, 2007.)

Even assuming the conditions of Morris' cell were as he alleged upon his arrival, however, the undisputed evidence shows that he was provided with supplies he could have used to clean his cell. Thus, his conditions did not rise to the level of cruel and unusual punishment in violation of the Eighth Amendment. At deposition, Morris admitted that during his confinement in cell DS-1 #7, he had access to a sink with running water, a towel, and toilet paper. (Morris Dep. 55:8, 57:22-23.) There is some dispute as to whether Morris was provided soap. In his offender complaint of October 14, 2003, Morris stated that all of his personal hygiene items "were confiscated except for 2 bars of soap and 1 toothpaste." (Gerber Aff. Ex. C.) He now claims that what he meant by his complaint was that these were his only possessions not declared contraband upon his transfer, not that he was provided with two bars of soap. (Morris' "Cured Concise Statement" at ¶ 11.) At

16

deposition, he claimed he was never provided with soap. (Morris Dep. 57:22) In any event, Morris admitted in his offender complaint dated October 30, 2003 that during his stay in cell DS-1 #7, a prison official "sprayed some cleaning agent on some toilet paper" for him to use to clean his cell (Gerber Aff., Ex. E), an event which he also reported at his deposition (Morris Dep. 54:16-25). While Morris claims these cleaning supplies were insufficient, they set his case apart from the conditions that courts in this circuit have found sufficient to present a constitutional claim. *See, e.g., Johnson*, 891 F.2d at 139-40 (overturning judgment for the defendants where prisoner alleged that he was held for three days in segregation cell smeared with human feces and having no running water); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (finding summary judgment inappropriate where there was a genuine dispute as to whether prisoner was held in cell that was filthy, smelled of human waste, lacked adequate heating, contained dirty bedding, had "rusted out" toilets and no toilet paper, and had black worms in the drinking water).

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if they are in genuine dispute. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). Here, Morris' allegations that his cell was severely contaminated by human feces are belied by the record, including his own offender complaints and the affidavit of a fellow inmate Morris himself submitted to the court. Furthermore, Morris admits to having at least some supplies with which he could have cleaned his cell. Therefore, the record taken as a whole could not lead a rational trier of fact to find in his favor, and there is no genuine issue for trial. Accordingly, the defendants are entitled to summary judgment.[1]

---

[1] Because I find no Eighth Amendment violation, I do not reach the defendants' qualified immunity argument.

**IT IS THEREFORE ORDERED** that the plaintiff's motion to appoint counsel (Docket # 202) is **DENIED**.

**IT IS ALSO ORDERED** that the plaintiff's motion for extension of time (Docket # 206) is **DENIED AS MOOT**.

**IT IS ORDERED** that the plaintiff's motion to clarify (Docket # 209) is **DENIED.**

**IT IS ORDERED** that the plaintiff's motion for extension of time (Docket # 214) is **DENIED.**

**IT IS ORDERED** that the plaintiff's motion to compel (Docket # 228) is **DENIED.**

**IT IS ORDERED** that the plaintiff's motion for relief (Docket # 230) is **DENIED.**

**IT IS ORDERED** that the plaintiff's motion to strike (Docket # 251) is **DENIED**.

**IT IS ORDERED** that the plaintiff's motion for reconsideration (Docket # 258) is **DENIED.**

**IT IS ORDERED** that the plaintiff's motion for relief (Docket # 267) is **GRANTED.**

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment is **GRANTED** as to plaintiff's last remaining claim. All claims having now been order dismissed on their merits and with prejudice, the clerk is directed to enter final judgment in favor of the defendants.

Dated this   10th   day of June, 2008.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge